## ROBERT W. IRWIN CO. v. EMPIRE TABLE CO., Inc.

### No. 7548.

Circuit Court of Appeals, Seventh Circuit.

Nov. 27, 1941.

Harry W. Lindsey, Jr., of Chicago, Ill., and Otis A. Earl and Ralph L. Chappell, both of Kalamazoo, Mich., for appellant.

W. Lee Helms, of New York City, and Geo. A. Chritton, Bernard A. Schroeder, Chritton, Wiles, Davies & Hirschl, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered September 4, 1940, adjudging Claim 5 of Patent 1,736,533 invalid for lack of invention. The patent, entitled an "End Extension Table," was issued November 19, 1929, to Robert W. Irwin and Nicholas Bekius. Plaintiff's title and ownership are conceded. The article described is known as a refectory table with an extension leaf, supported on wooden slides, capable of being housed under the main fixed table top when not in use, and of being withdrawn and elevated to form an extension of the main top whenever desired. The court below found that the claim in suit was anticipated by Bohr Patent No. 522,101, issued June 26, 1894, and by Ruthke British Patent No. 8545, issued April 30, 1895, and that these patents were not considered by the Patent Office during the prosecution of the application for the patent in suit. The court also found that there was no patentable invention in the claim in suit because of the Bohr and Ruthke patents in connection with other prior art references.

The claim is copied in a footnote.[1] Structures made in accordance therewith, as well as the Bohr and Ruthke patents, were introduced in evidence. These structures are so similar in method of operation that we find it difficult to describe that which plain-

---

[1] An extension table comprising a supporting frame having sides and ends, spacing members rigidly connected to the sides of said supporting frame at and above the upper edges thereof and between their ends, a main top rigidly secured to said spacing members whereby open spaces remain between the main top and ends of said supporting frame beyond the ends of the spacing members, extension top sections adapted to be received in said open spaces, bars fixed to said top sections carried by the ends of said supporting frame for slidably mounting the same for inward or outward movement whereby the sections may be moved outwardly beyond the ends of the main top and thereafter elevated into the same plane with the main top and moved backwardly to bring the inner edges into engagement with the ends of the main top, and means engaging with said bars when the extension top sections are moved backwardly for supporting said extension top section in the same plane with the main top when thus moved back into abutting engagement therewith.

tiff claims as invention. In general we think it may be safely stated that the extension leaf in each of the structures is withdrawn from beneath the main top of the table to a position abutting the same in practically the same fashion. As we understand plaintiff's contention, it relies upon the means described in the latter portion of its claim by which the extension leaf is elevated to the same plane with the main top, and means holding the extension top in the same plane therewith when it is moved into abutting engagement. There is no question but that the extension leaf of Bohr and Ruthke are on a plane with the main top when they are brought in abutting positions. The claimed novelty of plaintiff's invention lies in the fact that the extension leaf, in the course of operation—that is, removing it from beneath the main top—is in a plane therewith at a time before it assumes an abutting position. This is due to the fact that the bars upon which the extension leaf is fastened and which extend back and beneath the main top, have their inner ends turned downwardly and inwardly. The bars on which the extension leaf of Bohr is fastened are straight and, therefore, when the leaf is removed from beneath the table and first raised, it is in a position higher than the main table top, but just as the patent in suit, it assumes the same plane when abutted to the main top. This difference in the bars on which plaintiff's extension leaf is fastened, so it is argued, makes it possible to operate the device with one hand.

Defendant disputes this claimed advantage and claims that the Bohr device can also be operated with one hand. The structure of the latter patent before us indicates that this is true, but whether so or not, it appears to us that the change or improvement claimed by the patent is well within the realm of mechanical skill. In Ruthke, the bars upon which the extension leaf is fastened are very similar in shape and mode of performance to those on which plaintiff's extension leaf is placed. They are not straight as shown by Bohr, but are widened at the inner end. It appears that the position of the extension leaf in relation to the main top, during the course of operation, is dependent upon the size or shape of the inner end of the bar. We are unable to appreciate the claimed advantage for the structure in suit. After all, the extension leaf of the prior art, when finally in place for service, is on a plane with the main top. The final result is the same.

We are of the opinion that the District Court properly found the claim in suit anticipated by the prior art, and we are certain, that in view of such art, there is no such novelty or utility disclosed which entitles it to the status of invention.

The judgment of the District Court is affirmed.